IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CT-3090-FL

| | |
|---|---|
| JOHAN EICHEN KRIEGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BETTY A. BROWN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

This matter is before the court on the second motion for summary judgment (DE #28) of defendants North Carolina Department of Correction Director of Chaplaincy Services Betty Brown ("Brown") and Director of Division of Prisons Robert Lewis ("Lewis").[1] Plaintiff has responded to defendants' motion (DE #35). Accordingly, the matter is ripe for adjudication. For the following reasons, the court GRANTS defendants' motion for summary judgment (DE #28).

STATEMENT OF THE CASE

On July 14, 2008, plaintiff filed his complaint *pro se* pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights pursuant to the Free Exercise Clause of the First Amendment of the United States Constitution. Plaintiff also alleges that defendants violated his rights pursuant to

---

[1] Lewis is substituted for defendant Boyd Bennett, who no longer is the Director of the Division of Prisons. Lewis is substituted for Boyd Bennett pursuant to Federal Rule of Civil Procedure 25(d), which provides: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . ."

the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Religious Land Use of Institutionalized Persons Act of 2000 (hereinafter "RLUIPA"), 42 U.S.C. §§ 2000cc-1 et seq. Plaintiff alleges that defendants denied him access to certain religious materials for his Asatru religion and the use of musical instruments in the chapel at Scotland Correctional Institution. Plaintiff seeks both monetary and injunctive relief.

On February 18, 2009, defendants filed a motion for summary judgment, arguing that plaintiff's claims are without merit. Plaintiff filed a response on March 9, 2009. On March 16, 2009, plaintiff filed a motion for an order mandating that prison officials return certain publications. Defendants filed a reply concerning their motion for summary judgment on March 23, 2009. In their reply, defendants responded to plaintiff's motion for the return of property. On September 11, 2009, the court entered an order denying defendants' motion for summary judgment and denying as moot plaintiff's motion for an order mandating the return of publications. The court also appointed North Carolina Prisoner Legal Services (hereinafter "NCPLS") to represent plaintiff in this action, and allowed NCPLS to file an amended complaint.

In early 2009, Brown directed Scotland Correctional Institution's superintendent to allow all religious groups (including Asatru) to use the chapel.[2] (Second Brown Aff. ¶ 6.) Brown also directed the Scotland Superintendent to allow all religious groups to use the facility's musical instruments as long as the groups did not present a threat of damage to the instruments. (Id.) Brown states that the Scotland superintendent complied with her directive. (Id)

---

[2] At the time plaintiff filed his original complaint, he was an inmate at Scotland Correctional Institution. (Compl. p. 2.)

On October 13, 2009, plaintiff filed an amended complaint. In his amended pleading, plaintiff alleges that defendants' denial of his repeated requests for the use of sacred items and an outdoor worship circle places a substantial burden on his right to exercise his religion in violation of RLUIPA and the First Amendment of the United States Constitution. Plaintiff seeks declaratory, injunctive, and monetary relief.

On July 1, 2010, defendants filed their second motion for summary judgment, arguing that plaintiff's amended complaint is without merit. Plaintiff filed a response on August 23, 2010.

DISCUSSION

I. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. 242, 250 (1986).

II. Analysis

A. RLUIPA Claim

Plaintiff alleges that defendants violated his rights under RLUIPA. Section 2000cc-1(a) of Title 42 provides:

3

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once the plaintiff establishes a prima facie case, the defendants bear the burden of persuasion on whether the challenged practice is the least restrictive means of furthering a compelling governmental interest. Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006).

1. Denial of Worship Circle

In support of his first RLUIPA claim, plaintiff alleges that defendants' denial of an outdoor worship circle substantially burdens his right to exercise his Asatru religion. Defendants do not challenge plaintiff's allegation that his request for an outdoor worship circle stems from a genuinely held religious belief. Rather, defendants argue that plaintiff has not met his burden of establishing a prima facie case under RLUIPA because he has not shown that the denial of an outdoor worship circle is a substantial burden on the exercise of his Asatru religion.

A "substantial burden" on the free exercise of religion is one that forces adherents of a religion to modify behavior, to violate beliefs, or to choose between forfeiting governmental benefits and abandoning a religious precept. Lovelace, 472 F.3d at 187. A court may "not judge the significance of the particular belief or practice in question." Id. at n.2. Indeed, RLUIPA defines

religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

In support of their argument that plaintiff has failed to demonstrate a substantial burden on the exercise of his religion, defendants cite an action decided by the Eleventh Circuit Court of Appeals in Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007). In Smith, the Eleventh Circuit examined whether prison officials' denial of the plaintiff's request for a designated area of worship in the open area of the prison, a small quartz crystal, and a small fire pit substantially burdened his religious practice. Smith, 502 F.3d at 1277. The Smith court found that it did not. Id. The court reasoned that the denial of the requested items, standing alone, was insufficient to demonstrate a substantial burden on the exercise of his religion. Id. at 1280. The court further reasoned that, in order to meet his burden under RLUIPA, plaintiff needed to demonstrate how, if at all, the denial of the items requested constituted a substantial burden on his religious practice. Id.

The Eleventh Circuit in Smith is not the only court to require that an inmate articulate the alleged substantial burden on his religious exercise. For instance, the Seventh Circuit in Borzych v. Frank similarly held that "unreasoned say-so" is insufficient to create a material issue of fact with regard to whether a prison's action substantially burdens an inmate's religious exercise. 439 F.3d 388, 390 (7th Cir. 2006). See also Muwwakkil v. Johnson, No. 7:09cv00318, 2010 WL 3585983, at *7 (W.D. Va. Sept. 13, 2010) (finding the plaintiff did not demonstrate that prison officials knowingly violated his religious rights because he did not provide any religious basis on which the requested items were important to group prayer service).

Plaintiff argues that the Fourth Circuit in Lovelace expressly rejected the analysis set forth by the Eleventh Circuit in Smith, because under Lovelace, the centrality of a plaintiff's beliefs in the

5

religion in question has no bearing on the validity of a RLUIPA claim. 472 F.3d at 186. The court disagrees with plaintiff's analysis of Lovelace.

In Lovelace, the plaintiff, a Muslim inmate, was removed from the Ramadan observance pass list[3] and excluded from special Ramadan meals because he allegedly broke the Ramadan fast. Id. at 187. The Lovelace court held that "a substantial burden on religious exercise occurs when a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citation and quotation omitted.) The plaintiff in Lovelace stated that his exclusion from the pass list prohibited him from exercising his religious beliefs because "he was not permitted to fast, not permitted to attend NOI religious services, not permitted to attend Friday [Jumu'ah] services, and not permitted to participate in group prayers." Id. at 189. The court in Lovelace held that plaintiff's exclusion from the pass list did substantially burden his religion because the prison's policy "was written so that disqualification from participation in one religious exercise (the fast) meant that normal avenues for communal worship (group services and prayers) at the prison became unavailable automatically." Id. Accordingly, the plaintiff in Lovelace presented the district court with more than his unreasoned say-so to support his contention that the prison's practices created a substantial burden on the exercise of his religion. Thus, the court finds the court's reasoning in Smith is consistent with the Fourth Circuit's reasoning in Lovelace in that both require that a plaintiff articulate how the prison's challenged conduct substantially burdened an inmate's religious practice.

---

[3] The plaintiff's removal from the pass list barred him from special meals for fast participants and from Ramadan congregational prayers for twenty-four (24) days. Lovelace, 472 F.3d at 181.

6

In the alternative, plaintiff states that his action otherwise is distinguishable from Smith. In particular, plaintiff states that the plaintiff in Smith presented no evidence that the requested items were fundamental to that inmate's religion, whereas in this case, plaintiff has presented Asatru literature to support a finding that the requested items are fundamental to the practice of his religion. Specifically, plaintiff asserts that an outdoor ritual circle is necessary to engage in the blot, which plaintiff states is a critical Asatru ritual. In support of this claim, plaintiff has presented the court with three Asatru publications: (1) The Raven-Wolf Kindred, *Handbook of Asatru* (World Tree Publications 2008); (2) Valguard Murray and A.J. Ahlberg-Venezia, *World Tree Outreach Ministry & World Tree Publications: History and Mission* (World Tree Publications 2008); and (3) Tyrsoak Josephsson, *Our Sacred Land* (World Tree Publications 2003). Plaintiff states that these publications explain the importance of the worship circle and how the worship circle should be constructed. In particular, plaintiff directs the court to the following passage:

> Asatru is a nature religion and believes that the land and our unique relationship to it, is sacred. We believe that it is necessary to pursue a relationship with the unique land spirits, or land wights of all places where we practice our religion, trees, stones, bodies of water, and earthen mounds are known to give refuge to the land spirits, and are also usual components of sacred places of Asatru worship. It has been this way since the beginnings of our peoples['] sacred awareness over 8,000 years ago. It is also imperative to Asatru worship that such sacred places be used only by Asatru worshipers so as not to confuse or do harm to the spirits of the land.

Tyrsoak Josephsson, *Our Sacred Land* (World Tree Publications 2003) at 6. Plaintiff also directs the court's attention to another passage from *Our Sacred Land*, which states: "It is not just our will and determination which makes a site sacred, it is also the blessing of the Gods and Goddesses in conjunction with the holy spirits of the land itself." Id. at 12.

7

Although the materials presented by plaintiff highlight the significance of land to the Asatru religion, plaintiff's own allegations, along with the literature he submitted to the court, indicate that land is not essential to the practice of Asatru. Rather, the literature reflects that the Asatru religion is decentralized, individualistic, and that the practices vary from practitioner to practitioner. Plaintiff's own allegations support this conclusion. For instance, in response to defendants' motion for summary judgment, plaintiff states:

> Asatru is a personal, decentralized religion. There is no central leader, no mandated religious practices, and no mandated religious items. Asatruars adhere to the general tenents of the religion, but each member or kindred (group of members) exercises their faith in a unique and personal manner. As such, no one Asatruar or kindred can state or determine which items and rites are required by the faith of another Asatruar or kindred.

(Resp. p. 2.) Moreover, the literature provided by plaintiff indicates that an outdoor space is not essential to the practice of Asatru. Tyrsoak Josephsson, *Our Sacred Land* (World Tree Publications 2003), at 9. Specifically, Our Sacred Land states: "We can commune with Gods and Goddesses indoors, but it requires much more focus and energy." Id. Finally, the materials submitted by plaintiff list the mandatory religious items for Asatru worship, and an outdoor worship circle is not included in the list of mandatory items. Valguard Murray and A.J. Ahlberg-Venezia, *World Tree Outreach Ministry & World Tree Publications: History and Mission* (World Tree Publications 2008), at 9.

In summary, plaintiff has provided no religious basis on which the outdoor worship circle is essential to his religious practice, in that he has not stated how the denial of an outdoor worship circle has forced him to modify his behavior and violates his religious beliefs. In fact, plaintiff has not stated how the denial of the outdoor worship circle impacts his practice of Asatru in any way.

8

Instead, plaintiff relies upon his own unreasoned say-so, which is insufficient to meet the substantial burden requirement under RLUIPA. Smith, 502 F.3d at 1277; Borzych, 439 F.3d at 390. Accordingly, plaintiff has not demonstrated that defendants' denial of an outdoor worship circle substantially burdened the exercise of his religion. Thus, plaintiff is not able to establish a prima facie case under RLUIPA.

Assuming *arguendo* that plaintiff is able to establish a prima facie case under RLUIPA, the court next must determine whether defendants have demonstrated that "the burden in question is the least restrictive means of furthering a compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(2). When evaluating both the compelling governmental interest standard and the least restrictive means standard, the court must allow "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (quotation omitted). The Fourth Circuit has stated that among the enumerated concerns, security deserves "particular sensitivity." Lovelace, 472 F.3d at 190 (quoting Cutter, 544 U.S. at 722).

Brown set forth two compelling governmental interests for denying plaintiff's request for an outdoor worship circle. First, Brown asserts that highly visible outdoor Asatru services conducted around a permanent ritual circle could inflame other prisoners who perceive (even if incorrectly) Asatru as hostile to non-white prisoners, creating serious security concerns. (Second Brown Aff. ¶ 4.) The North Carolina Department of Correction ("DOC") has a compelling government interest in maintaining security, discipline, and order. See McRae v. Johnson, 261 Fed. Appx. 554, 558 (4th Cir. 2008) (per curiam) (unpublished); Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir.

9

1998); United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). Additionally, other courts have upheld prison regulations suppressing the use of religious symbols which promote racism and violence on the basis that it "serves the compelling state interest of maintaining prison security." Wood v. Me. Dep't of Corr., No. CV-06-156-B-W, 2008 WL 2222037, at *2 (D. Me. May 22, 2008) (unpublished) (cited with favor in Barefoot v. Pickett, No. 5:06-CT-3112-BO, 2010 WL 3239110, at *2 (E.D.N.C. Aug. 16, 2010)).

Plaintiff appears to assert that the denial of an outdoor worship circle has been applied in a non-neutral manner because the DOC provides Native Americans a prayer circle. However, plaintiff has not presented evidence that allowing Native Americans access to a prayer circle presents a similar security risk. See Mayfield v. Texas Department of Criminal Justice, 529 F.3d 599, 611 (5th Cir. 2008) (finding no neutrality problem because the plaintiff presented no evidence that other religious groups have access to religious paraphernalia presenting similar security risks). Thus, the court finds that this argument is not persuasive.

In addition to the security risk, defendants assert that they have a compelling interest in denying plaintiff an outdoor worship circle because the construction of an outdoor worship circle in accordance with plaintiff's specifications would be a burden on DOC resources.[4] (Lewis Aff. ¶ 4 and Brown Aff. ¶ 4.) Additionally, the construction of an outdoor worship circle in every prison which houses an Asatru inmate would be prohibitively expensive. (Id.) The court agrees with

---

[4] Plaintiff submitted to the DOC a list of materials necessary to construct an outdoor worship circle. These materials include: forty-two (42) eight to ten inch stones; (2) one half ton of three to five inch stones; (3) two ton of pee-gravel, or "a lot of mulch"; (4) four hundred (400) to six hundred (600) pounds of concrete to construct an alter; (5) twelve (12) pieces of firewood annually; (6) one to four evergreens; and (7) a twenty-seven (27) foot diameter outdoor area. (Second Brown Aff. Ex. 2.)

10

defendants and finds that this accommodation would impose a significant burden on the resources of the DOC.

The court next must examine whether the denial of an outdoor worship circle is the least restrictive means of furthering the compelling governmental interest in maintaining security. Defendants have presented evidence that the DOC allows Asatru inmates to worship in both an individual and group setting. (First Brown Aff. ¶ 2 and Second Brown Aff. Ex. 1.) Plaintiff does not contend that he has been prohibited from practicing his Asatru religion. Additionally, as stated, there is no authority stating that the outdoor worship circle is essential to the practice of Asatru. Accordingly, affording due deference to the experience and expertise of prison administrators, the court finds that the DOC has presented a legitimate government interest for not providing plaintiff with an outdoor worship circle, and that its method is the least restrictive means of furthering that interest. The court therefore dismisses this claim with prejudice.

    2.    Essential Sacred Items

In support of his second RLUIPA claim, plaintiff alleges that defendants' denial of essential sacred items substantially burdens his right to exercise his Asatru religion. Defendants again do not dispute the fact that plaintiff's request for the essential sacred items stems from a genuinely held religious belief. Rather, defendants maintain that plaintiff has not shown that the refusal of the essential sacred items substantially burdens his religious exercise.

In support of their argument, defendants assert that plaintiff has not clearly articulated which items he considers to be the essential sacred items. In response to defendants' motion for summary judgment, plaintiff presented an affidavit to the court in which he enumerates his alleged essential sacred items for both personal and group worship. The alleged requested personal items include:

11

(1) one horn cup; (2) one pint of honey; (3) one 24-piece elder futh casting rune set with drawstring pouch; (4) one 24-piece elder futh shuffling rune set with drawstring pouch; (5) one rune casting cloth with drawstring pouch; (6) one brisingamen; (7) incense; (8) three large feathers; (9) one cloth helm (for men); (10) one leather headband (for women); (11) one leather belt (for women); (12) three wooden medallions, one key, one knife, one drop spindle; (13) one hooded wool cloak with wooden button; and (14) one sacred items box. (Plaintiff's Aff. ¶ 9.) The alleged requested group service items include: (1) one large ceremonial horn with stand; (2) two ceremonial bowls; (3) one alter cloth; (4) one banner; (5) one flute; (6) one oath ring; (7) one box of wood safety matches; (8) heathen music; (9) ceremonial sword, spear, hammer, axe, and bow; (10) ceremonial shield; (11) storage box and lock; (12) bi-weekly services; and (13) midsummer feast and quarterly celebrations. (Id. ¶ 10.) In turn, the DOC has submitted evidence to establish that it allows Asatru inmates the following religious property for personal use: (1) one cloth bag; (2) one set of runes; (3) one religious medallion; and (4) reading material.[5] (Second Brown Aff. Ex. 3.) The DOC allows Asatru inmates the following religious property for group services: (1) altar; (2) altar cloth; (3) a bowli; (4) mead; (5) statues or picture of various gods and goddesses; (6) runes; (7) altar candles; (8) a small evergreen twig; (9) a gander; (10) a large ceremonial Thor Hammer (a large photograph); (11) a sax; and (12) folk music. (Id.)

As stated, a "substantial burden" on the free exercise of religion is one that forces adherents of a religion to modify behavior, to violate beliefs, or to choose between forfeiting governmental benefits and abandoning a religious precept. Lovelace, 472 F.3d at 187. Plaintiff has not met this

---

[5] The approved reading material includes: Beowulf, the Elder Poetic Edda, the Elder Futhark, Rune Alphabet, and the Prose Edda.

burden with respect to his request for essential sacred items. First, plaintiff has not clearly articulated exactly which essential sacred items he requests. Plaintiff has provided four different lists of alleged religious items he has requested. (DE # 1 pp. 6-12; DE # 20, pp. 2-3; DE # 20, p. 8; Plaintiff's Aff. ¶ 9.)[6] The lists overlap somewhat, but each list is unique. Additionally, it appears that the DOC has provided plaintiff with several of the requested alleged essential sacred items. Plaintiff does not argue that he has not received any of the items the DOC allegedly provided.

Secondly, plaintiff has not presented any evidence to demonstrate, how, if at all, the denial of the items requested constitute a substantial burden on his religious practice of Asatru. Nor has plaintiff stated how, if at all, the items provided by the DOC are inadequate to meet his religious needs. The court recognizes that plaintiff submitted literature on the Asatru religion, and that the literature discusses several items commonly used in the practice of Asatru. However, the literature also provides that the Asatru religion is highly individualistic and that the religious practices vary from practitioner to practitioner. Moreover, plaintiff himself states that there are no mandated religious items. (Def.s' Mem. p. 2.) Plaintiff has not provided any additional reasoning in support of his blanket assertion that the alleged essential sacred items were necessary for his individual practice of Asatru. Instead, he makes unreasoned demands based upon his "say-so." This is insufficient to demonstrate a substantial burden on his religious practice. See Smith, 502 F.3d at 1277; Borzych, 439 F.3d at 390. Moreover, plaintiff has not established that defendants knowingly violated his religious rights. See Muwwakkil, 2010 WL 3585983 at *7. Instead, the record reveals that defendants have expressed a willingness to accommodate plaintiff's religious practices. This

---

[6] Defendants also allege that they received another list of essential sacred items in plaintiff's response to their interrogatories. (Def.s' Mem. p. 3.)

is evidenced by the fact that defendants have expressed a willingness in these proceedings to accommodate plaintiff's requests for religious property. In particular, defendants accommodated his request to have access to musical instruments when the issue was brought to their attention.

Because plaintiff has not demonstrated a substantial burden on his religious exercise, he is unable to establish a prima facie RLUIPA case. Thus, defendants are entitled to summary judgment on this claim. The court dismisses this claim without prejudice.

    B.  First Amendment Claim

In addition to his claim pursuant to RLUIPA, plaintiff also alleges that defendants' denial of an outdoor worship circle and essential sacred items violates the First Amendment of the United States Constitution. The Fourth Circuit Court has held that "RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise." Lovelace, 472 F.3d at 198. The court in Lovelace explained that RLUIPA mimics the First Amendment in that it incorporates the substantial burden test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof. Id. at 199 (citation omitted). The court in Lovelace stated that the primary difference between the two claims is that "RLUIPA adopts a more searching standard of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness." Id. (quotation and citations omitted). The court has determined that plaintiff is unable to establish a prima facie case under RLUIPA because he is unable to establish that defendants substantially burdened the exercise of his Asatru religion. RLUIPA provides more protection for an inmate's religious exercise than the First Amendment. Thus, the court finds that plaintiff likewise is unable to establish a prima facie case under the First Amendment.

14

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 28) is GRANTED. The court dismisses plaintiff's worship circle claims with prejudice, but dismisses plaintiff's essential sacred items claims without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 13th day of October, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge